UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTOINETTE COLEY-ALLEN,

                              Plaintiff,

                                                                        <u>DECISION AND ORDER</u>

                                                                        09-CV-6036L

          v.

STRONG HEALTH, UNIVERSITY OF
ROCHESTER MEDICAL CENTER,

                              Defendant.
_____

       Plaintiff Antoinette Coley-Allen ("plaintiff"), was first employed by the University of Rochester (the "University") in 1987 and working in a variety of positions, ultimately attaining the position of Registered Nurse II in the Cardiothoracic Surgery department ("Cath Lab") at the University of Rochester Medical Center, which she held from 2005 until her termination in May 2007. Plaintiff brings this action against the University, alleging that she was subjected to a hostile work environment, discriminatory termination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title VII"), the New York Human Rights Law, N.Y. Exec. Law §296, and 42 U.S.C. §1981. The University now moves for summary judgment dismissing the complaint, on the grounds that plaintiff lacks evidence to support her claims. (Dkt. #34). Familiarity with the underlying facts is presumed.

       Plaintiff was initially represented by counsel, but her attorney withdrew prior to the filing of the instant motion for summary judgment. Because of her *pro se* status, plaintiff was provided with a particularized, explicit notice detailing the nature of the motion and the relief sought, notifying her that her responses in opposition to the motion were due by August 8, 2011, and warning her that failure to respond could result in the dismissal of her claims (Dkt. #35). As of the date of this


Decision and Order, plaintiff has failed to respond or otherwise oppose the motion for summary judgment.

While the motion is unopposed, the Court has nonetheless examined the record in detail, remaining mindful of the standards relevant to deciding a motion for summary judgment, and granting plaintiff every favorable inference as a *pro se* litigant, and as a non-movant. *See e.g.*, *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir.1999) (where the party opposing summary judgment is proceeding *pro se*, the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest"). For the following reasons, the motion for summary judgment is granted, and the complaint is dismissed.

Plaintiff's claims of employment discrimination pursuant to Title VII are subject to the burden-shifting analysis described in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, plaintiff must establish a *prima facie* case of discrimination by demonstrating: (1) membership in a protected class; (2) satisfactory job performance; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002). If plaintiff establishes a *prima facie* case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then returns to plaintiff, who must supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is a pretext, and that the adverse employment action was more likely than not the product of unlawful discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993). *See generally Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002).

Assuming *arguendo* that plaintiff could establish a *prima facie* case of race-related discrimination based on the termination of her employment, I find that the University has produced ample evidence that the termination of her employment occurred for a legitimate, non-discriminatory

reason, and that plaintiff has failed to produce (nor does the record contain) a shred of evidence that this proffered basis for her dismissal is pretextual.

It is undisputed that throughout her employment with the University and in particular during the relevant period from December 1, 2006 (before which plaintiff's claims are time-barred) to May 2007 (when plaintiff's employment was terminated), plaintiff was serially and repeatedly disciplined via written warnings, progressive write-ups and multiple suspensions for performance-related problems.  Plaintiff's documented interpersonal difficulties at work included inappropriate interactions with coworkers, engaging in arguments and confrontations with staff and supervisors in front of coworkers and patients, exhibiting rudeness, hostility and unprofessional behavior toward patients and their families, "acting out,"disregarding hospital policies for patient safety, and generally failing to exhibit proper workplace demeanor. (Dkt. #34-5 at Exh. B, #34-6, #34-7, #34-8, #34-9).

As early as 2000, plaintiff was warned that her failure to stop engaging in inappropriate and disruptive verbal interactions with her coworkers would result in further discipline, including termination.  After her transfer to the Cath Lab in May 2005, plaintiff's inappropriate behavior continued and even escalated, to the point that her coworkers repeatedly complained to supervisors about plaintiff's bullying conduct, and the tension and loss of morale that it had created in the unit. Furthermore, it is undisputed that plaintiff repeatedly failed to follow the Cath Lab policy which required nurses to inform the Charge RN before leaving the unit, in order to permit adequate coverage for patients and ensure their safety.  At a meeting to discuss her performance issues on March 16, 2007, plaintiff became so belligerent that one of the participants became uncomfortable and asked to leave the meeting.  Based on her conduct at the meeting, plaintiff was placed on a three-day suspension.  Plaintiff was warned that additional incidents would be grounds for termination.

Plaintiff returned to work on March 20, 2007, and continued to engage in disruptive confrontations with coworkers, for which she was counseled on multiple occasions.  On or about April 24, 2007, she was provided with a performance improvement plan which prescribed specific

goals, including compliance with the unit's policy for signing out when leaving the unit. On May 9, 2007, plaintiff left the Cath Lab unit without signing out. At that point, the University's Associate Director of Cardiovascular Nursing Practice, Anna Lambert, along with Cath Lab Nurse Manager Dawn Buss ("Buss"), decided that plaintiff's employment should be terminated.

Plaintiff alleges that she was subjected to race-based disparate treatment with regard to the University's progressive discipline, refusal of her request for a full-time schedule, failure to promote her to a higher nursing position, and termination of her employment. However, plaintiff offers no appreciable evidence that any of the University's conduct was racially motivated. Rather, she relies on speculation, her belief that certain, mostly race-neutral remarks by Buss and some of her coworkers were intended to be racially charged and offensive, and unsupported allegations that two other employees who failed, as she had, to sign out of the Cath Lab properly, were not terminated.

The University counters these allegations with evidence that the statements of which plaintiff complains (for example, a statement referring to a patient as "trashy," and a statement asking someone if they spoke "gutter slang") have no racial connotations or are not sufficiently discriminatory to support plaintiff's allegations. The University also offers evidence that the employees identified by plaintiff as failing to sign out of the Cath Lab were not similarly situated to plaintiff: the University avers that the employees in question did not, in fact, commit the infractions of which plaintiff accuses them, and in any event, were not subject to disciplinary warnings or on a performance improvement plan at the time.

Further, there is no evidence that the progressive discipline to which plaintiff was subjected was motivated by discriminatory animus. Plaintiff does not dispute that she engaged in the unacceptable and unprofessional behavior for which she was disciplined, or deny that she failed to substantially comply with the requirements of her performance improvement plan. In fact, at her deposition, plaintiff repeatedly admitted prior incidents of unprofessional conduct, complaints by coworkers, and failing to sign out of the Cath Lab. (Dkt. #34-2 at 54, 87, 112, 153, 161, 169, 231-232).

Plaintiff's claim that she was discriminatorily denied a return to a full-time schedule (after having previously requested and obtained a reduction in her schedule to part-time hours) is similarly bereft of supporting evidence. The University avers, and plaintiff offers no evidence to the contrary, that no full-time openings existed in the Cath Lab at the time of plaintiff's request.

Plaintiff also claims that she was denied promotional opportunities while in the Cath Lab. However, plaintiff does not allege or offer any evidence that she ever applied for any specific promotion, let alone that she was denied a promotion under circumstances suggesting discrimination, and as such, she has failed to state or establish a claim for discriminatory failure to promote. *See e.g.*, *Brown v. Coach Stores*, 163 F.3d 706, 710 (2d Cir. 2000) ("[courts] generally require a plaintiff [asserting discriminatory failure to promote] to allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that . . . she or he generally requested promotion"); *Billups v. Dent Wizard Int'l Corp.*, 2010 U.S. Dist. LEXIS 60255 at *26 (S.D.N.Y. 2010) (plaintiff cannot establish a *prima facie* case of discriminatory failure to promote where plaintiff never applied for the position in question).

To the extent that plaintiff claims she was subjected to a hostile work environment, she has not alleged any acts of "discriminatory intimidation, ridicule, and insult ... sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment," nor has she set forth evidence upon which such conduct could be imputed to the University. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). *See also Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). At most, she has alleged a handful of isolated incidents of race-neutral, "boorish or offensive use of language" by coworkers, *Benette v. Cinemark U.S.A., Inc.*, 2003 U.S. Dist. LEXIS 22636 at *18 (W.D.N.Y. 2003), some of which were heard "second-hand" and none of which she complained about to supervisors or pursued via the University's well-publicized anti-harassment policy, with which plaintiff admitted familiarity. (Dkt. #34-2 at 40, #34-5 at Exh. A). Indeed, the only race-related language of which

plaintiff complains -- stray references by Buss to African-American women as "black girls" -- lacks "sufficient gravitas to be considered circumstantial evidence of discrimination," let alone sufficient evidence to comprise a hostile work environment. *Voltz v. Coca-Cola Enters.*, 91 Fed. Appx. 63, 72 (10th Cir. 2004) (assessing an employer-decisionmaker's reference to an employee as a "black girl"). The incidents described by plaintiff are simply insufficient as a matter of law to establish a hostile work environment. *See also Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir. 1992) ("incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief").

Finally, the complaint alleges that plaintiff's termination occurred in retaliation for having complained about comments by her coworkers. Specifically, plaintiff states that in an April 2, 2007 written self-evaluation which she completed in connection with the University's annual employee performance assessments, plaintiff indicated that she would continue to, "communicate with Nurse Manager and leadership as prior any cultural disrespectful [sic] and inappropriateness from those individuals and fellow colleagues." (Dkt. #1 at ¶21).

On a motion for summary judgment, a test similar to *McDonnell-Douglas, supra*, is applied. Plaintiff must first establish a *prima facie* case of retaliation by showing: (1) her participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. Once she has done so, the burden shifts to the defendant to establish a legitimate, non-retaliatory basis for the complained-of action. If the defendant does so, the burden returns to plaintiff, who must show that the legitimate, non-retaliatory reason articulated by the defendant is a mere "pretext," and that retaliation was more likely than not the reason for the complained-of action. *See Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000); *Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir. 1998).

Plaintiff offers no evidence describing the comments to which she was referring or substantiating any "prior" complaints. I also find dubious her contention that her vague, passing reference to "cultural disrespectful [sic]" constituted a formal complaint of discrimination

- 6 -

approaching the level of protected activity. *Id*. *See Davis-Molinia v. Port Auth. of N.Y. & N.J.*, 2011 U.S. Dist. LEXIS 93868 at *36 n. 27 (S.D.N.Y. 2011) ("[c]omplaints about conduct clearly prohibited by the statute need not mention discrimination or use particular language . . . However, ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity") (internal citations omitted); *Foster v. Humane Society of Rochester & Monroe County, Inc.*, 724 F. Supp. 2d 382, 394-395 (W.D.N.Y. 2010) (in order to allege that complaints to management comprised protected activity, a plaintiff must allege that she complained about acts of discrimination, and not other issues or work-related problems).

Assuming *arguendo* that plaintiff's reference in her self-assessment to potential future "cultural disrespectful [sic] and inappropriateness" by coworkers, along with the one-month time lapse between the self-evaluation and plaintiff's termination, is sufficient to make out a *prima facie* case of retaliation, plaintiff has, as described in detail above, failed to rebut the University's legitimate, non-discriminatory reason for terminating her employment: a consistent record of failing to comport herself in a professional manner, and/or to comply with University policies concerning patient safety.

For these reasons, the University's unopposed motion to for summary judgment dismissing the complaint (Dkt. #34) is granted, and the complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       November 29, 2011.